FIRST STATE BANK OF AVINGER v. J. J. SEGAL CO. (No. 1536.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 10, 1915. Rehearing Denied Dec. 23, 1915.)

CORPORATIONS ⬟432—ACTS OF OFFICERS—INDIVIDUAL OR CORPORATE ACT—EVIDENCE.

In an action for the conversion of three bales of cotton mortgaged to plaintiff, and received from mortgagor's wife by defendant's manager, who was also a cotton speculator for himself, evidence *held* to warrant a finding that the cotton was delivered to and received by the manager, as such, for defendant corporation, and not by the manager in his individual capacity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ⬟432.]

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by the First State Bank of Avinger against the J. J. Segal Company for conversion of cotton. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

T. D. Rowell, of Jefferson, for appellant. R. R. Taylor and C. C. Hines, both of Jefferson, and O'Neal & Allday, of Atlanta, for appellee.

LEVY, J. The action is by appellant against appellee for conversion of three bales of cotton upon which appellant held a chattel mortgage. The trial was before the court without a jury, and resulted in a judgment for appellee.

The trial court made the finding of fact that J. J. Segal was engaged in the cotton business in his own private and separate right, and purchased the cotton in controversy from the wife of the mortgagor on his own individual account, and not for the company, a corporation, of which he was then manager. And from this fact the court concluded that the company, the defendant, did not convert the cotton. The appellant assails the above finding of fact that J. J. Segal purchased the cotton on his own account, and not for the company, as without any evidence

to support it. It is without dispute in the record that appellant had a prior chattel mortgage duly recorded on the cotton in controversy, and that appellee company had notice thereof. J. J. Segal was the manager of the J. J. Segal Company, a corporation engaged in selling dry goods, and had authority to attend to all business of the company without consulting the directors of the company in amounts less than $1,000. J. J. Segal did not have authority to buy cotton for the company except as the manager in the settlement of accounts due the company by its customers. J. J. Segal individually engaged in buying cotton on speculation. It appears that Henry Stevens on February 27, 1912, executed a chattel mortgage to the Segal corporation to secure payment of $250. Mary Stevens, wife of Henry Stevens, on September 27th hauled two bales of cotton, and on October 15th hauled one bale of cotton, all raised by Henry Stevens, to Jefferson. The three bales of cotton were covered by appellant's mortgage, and also by appellee's mortgage, which was junior. Mary Stevens testified:

"I paid him, Mr. Segal, three bales of cotton. I let Mr. Segal have the cotton I brought to Jefferson because I knew I owed him, and I just was paying him. * * * I turned those three bales over to pay on my debt."

It was without dispute that the three bales of cotton were delivered to J. J. Segal, that no one but him handled them, and that on the same day of delivery to him there was credited on the $250 on the books of Segal Company the sums respectively of $80.45 and $44.15, making a total of $124.60, which, according to the bookkeeper, "balances the account." The value of the cotton at date of credits was shown to be $88.45 and $44.45.

Construing this evidence in the light most favorable to appellee, it is concluded that the only admissible finding of fact is that the cotton was delivered to J. J. Segal to pay in settlement of the balance of the $250 debt due the Segal Company, and that J. J. Segal, as manager of the Segal Company, and as within his authority, received the cotton and applied the proceeds of sale thereof to the account which, as the bookkeeper says, "balances the account." There is no evidence to the contrary that J. J. Segal took the cotton and directed the credits to the account of the company. J. J. Segal does not testify that he did not act for the company. And, while Mary Stevens in her evidence uses the language, "I was not delivering it [the cotton] to the Segal Company; I didn't know anything about it," and, "I owed him [J. J. Segal] a debt, and he had been running me for about 15 years," such language, in view of the further evidence clearly appearing in the record, could not reasonably be taken as showing a purchase of the cotton on individual account by J. J. Segal. It appears that the J. J. Segal corporation was effected in February, 1912, and that the mortgage to

secure the $250 was taken after the incorporation in the name of the corporation. And the bookkeeper of the corporation testifies in respect to the $250 debt:

"The account of Mary Stevens is the same account. * * * The heading of the account [on the books of the corporation] has both names to it; first is Henry Stevens, and it has been scratched out, and Mary put in the place of it."

And as respects the debt Mary Stevens testified:

"I and Henry made it together."

If, therefore, Mary Stevens, before her marriage, contracted a store debt to J. J. Segal, it conclusively appears that the Segal corporation succeeded to and took over the debt. And the fact that the debt appeared on the corporation books, and that the proceeds of the cotton were credited to the account, would be inconsistent with an inference of individual dealing therewith by Segal himself. And, further, according to the evidence of Mr. Wheelan, a director of the company, if the three bales of cotton had been turned over to Mr. Segal individually, the proceeding would have been:

"Mr. Segal would give this woman a draft to the Guaranty State Bank for the money, and the bank would take the draft up and pay for the cotton, and this woman would get the money for the cotton."

But it does not appear by any evidence that Mary Stevens paid the Segal Company the money. It appears by her evidence, and without conflict:

"All that I ever paid him was just the cotton that I turned over to Mr. Segal on my debt. * * * I don't know what they weighed, and I don't know what cotton was selling for at that time. * * * I don't know what Mr. Segal did with it."

The mere fact that the three bales of cotton were of the value of $132.90, and that only $124.60 was credited on the account, would not of itself be sufficient to establish individual dealing by Segal, because the record shows that the $124.60 "balances the account."

It is believed that the judgment should be reversed and here rendered in favor of appellant for $132.90, and costs of the trial court and of this appeal.

Reversed and rendered.